Ruffin, C. J.
 

 We do not stop to enquire into the particular cause, why E. Mathews did not appeal; nor whether it would have been proper on an appeal to hear affidavits as to the merits, which were not offered in the County Court; because taking up the case upon the record alone, as urged by W. Matthews, we think it must be determined'against
 
 *158
 
 This being a summary proceeding of an inferior tribunal, not according to the course of the common law,'we think the party entitled
 
 ex débito justitice,
 
 to a
 
 certiorari
 
 to jj. np for review in the matter of law, as in other cases on a writ of error: and if found to be erroneous, to have it quashed.
 

 It has been decided in the cases of
 
 Wilson
 
 v
 
 Shuford, 3.
 
 Murph. 504, and
 
 Carpenter
 
 v
 
 Whitworth
 
 3 Ired. 204, that the report of the processioner must set forth the claims of the respective parties and their opposite allegations in such -a way as to shew the points of dispute, so that the parties may not be surprised, the freeholders know therefrom what they- are to decide, and the Court see that the lines or corners established by the freeholders are those which one of the parties claimed and the other denied to him. Without such a rule, there woutd be no precision in proceedings of this kind. Although it was, no doubt, his purpose to comply with it, the processioner seems to us to have entirely failed in the report made by him in this case.
 

 The report begins by stating, that the processioner had « proceeded to ascertain the black jack corner, then down, from which corner East was one of the lines between -the said William and Ezekiel.” That line, then, was one of
 
 the lines,
 
 which, as was before mentioned in the report, was f0 be processioned and established. It then proceeds to state, “that after running two lines, the processioner, from particular circumstances, thought it doubtful where the black-jack corner formerly stood.” There it stops, as to that point of the controversy; and from what is said, it cannot be told, what .the dispute between the parties was as to that corner. The processioner says he was at a loss to determine, where the corner was. So the parties also might have professed an -inability to identify it, and -therefore did not set up a claim to any particular point as the
 
 terminus.
 
 At all events, it is not stated, that the parties respectively,claimed that
 
 terminus
 
 to be at different designated points; so as .to put them at issue on the question. In such a case, and upon an order passed, that the freeholders were “ to ascertain and
 
 *159
 
 report where the true line is between the parlies,” those persons would have to enquire at large and inform the parties, where the tree stood. But that 'is not their office under the statute. It is, on the contrary, to establish “the disputed line,” by finding that it begins at such a point and runs to such another, as claimed by one of the parties. There must be an issue between the parties, apparent on the procession-er’s report; otherwise there is no controversy, that can be definitively decided.
 

 The report then advances
 
 to
 
 another line, about which, it seems more distinctly, there was a dispute. But of the precise point in dispute the report fails to present the requisite information; and in this it is again defective. It states, that it was agreed (as we understand it) that from the point of intersection of the County line and a certain other line (which is not very intelligibly described,) the processioner should iun and procession a line South to William Matthews’ corner; and that in order (as we understand it)' to ascertain where that, William Matthews’ corner, stood, he began
 
 “
 
 at a marked post-oak, which is said to be in the County line,” and
 
 run due South
 
 until he came to the aforesaid branch; and then,
 
 still running clue
 
 South, he was, at the distance of one chain and eighteen links, forbidden to proceed by E. Matthews, upon the plea that he was running'on his'Jand, he, the said E. Matthews, claiming the land from that place East as far as the branch with its various courses to Brush creek. From this we can collect, that Ezekiel Matthews claimed, that the branch, from the point at which the survey crossed it, to Brush creek, was his boundary, and that the land belonged to him, which was on the west side of the branch and between it and the line
 
 which the processioner was then
 
 running, that is to say, South from the “ marked post-oak” and after crossing the branch. Now we are unable to see, that the claim of William Matthews is in conflict with that. They probably are in fact inconsistent with each ether; but it is not directly affirmed to be so, nor are they so described in the report as to appear so to be. The words are: “ William Matthews
 
 claiming the land
 
 East
 
 *160
 
 from a straight line running
 
 from a corner, formerly Pick-e^’s c0> ner on the! south side of his plantation, to an oak now Aaron Jiloffilt’s and the said EzekieVs corner.”
 
 cannot identify
 
 this
 
 line,, thus claimed by William,
 
 to
 
 be
 
 that
 
 which the processioner was running, when Ezekiel stopped him. They may be the same; but one cannot see that they are. The one' begins at “ a marked post-oak supposed to be in the county line”; the other, at “ a corner, formerly Pickett’s corner,” without saying whether it be a marked post-oak or any other tree, pr whether it stood in or out of the county line; the one runs south trom the marked post-oak to a branch, and, after crossing the branch, is still running south, but without any
 
 terminus
 
 called for; the other runs straight from Pickett’s old comer, without mentioning any course, to a certain oak as the
 
 terminus.
 
 Thus, it may be that the two lines are not identical ; and, it they be not, the report must be pronounced defective. It is not sufficient, that it should be reported, that two persons, owning co-terminous lands, claim different lines. It ought to state the lines as claimed by each, and that the processioner, while running a line as claimed by one of the parties,- was stopped by the other. One of the purposes of having the adjoining proprietors presentís, that they may see the lines, claimed by the person, designated by actual survey, and be enabled by view to know whether it interferes with their lands, and how far. In this case the controversy seems, probably, to have been, what was the county liue-«-that being called for on opposite sides, as the line between the parties. It may be, that Pickett’s corner and the marked post-oak are one and the same ; or that the former is at a point in the county line (as claimed by William), north of the latter, and that, by running south from Pickett’s corner, the line would strike the marked post oak and go on to Moffitt’s corner also, as claimed by the same party. But that it is so, must be only conjecture ;■ and that is not aground for a judicial sentence. We cannot know, that, if the processioner had run. the line claimed by William from Pickett’s comer (wherever i-t is) to Mofiitt’s and E. Matthew’s corner oak (wherever it is,) t-heo-
 
 *161
 
 ther party would not have seen from the running, either that it did not interfere with him, or, if it did, that it was the true line ; and thus been led to decline the controversy. It is nothing to the purpose, that a party stops a surveyor from running one line, when the other party claims a'nother line. To found this proceeding, theprocessioner must be'forbidden to proceed on a line claimed by the party, and the locality of the line thus claimed,- ah'd of the’ part of ft, at which he was stopped, must be stated in the report, so as to constitute an issue on the boundary.
 

 We think,- therefore, not only that his HoNok was right in reversing the judgment of the County Court and quashing the report of the freeholders; but that he should have gone farther, and' directed the report of the processioner also’ to be quashed, as wrong from the beginning;1 and so this court adjudges,- and with costs against William Matthews throughout.
 

 Per Curía-iví, Judgment accordingly.-