The report of the processioner is radically defective in not stating with precision the claims of the respective parties, so as to show what lines were disputed or how far they were disputed. In every legal controversy there must be an identity given to the subject, and an issue between the parties. In actions at common law in which the question of boundary is triable the land is described and identified in the declaration or new assignment, and the issues arise on the pleas and rejoinder, and thus it appears upon the record what the controversy is. There is the same necessity for precision in proceedings of the kind under consideration, since it cannot otherwise be known to what subject the controversy relates nor on what point it is to turn; and the Court cannot see what decission [decision] should be given, nor to whom costs should be awarded. Indeed, the very import and conclusive effect given by the statute to these inquisitions, whereby two of them vest an absolute title, requires the court to exercise the utmost vigilance to prevent surprise and inquiry to the true owners of land by tolerating any undue laxity in the proceedings. As has just been said, it is necessary that the parties should be brought to a point in this proceeding as in (469) actions and the Legislature intended they should. But, unfortunately, instead of leaving the parties to the regular modes of pleading whereby the issues may be joined technically and distinctly, they are delivered into the hands of a processioner, whose report is to serve the purposes of declaration and plea and all the subsequent steps necessary to come to an issue. It is not surprising, then, that the requisite precision is not observed, and so few proceedings of the kind can be sustained, though the Court has taken pains heretofore to explain themselves upon this subject as clearly as they could. Carpenter v. Whitworth, 25 N.C. 204;Mathews v. Mathews, 26 N.C. 155.
This report points out no specific dispute, but leaves everything at large. It begins by saying that the processioner "went upon the premises" on a certain branch of a creek for the purpose of processioning "the land of Jacob Hoyle." But it gives no description whatever of the land thus claimed by Hoyle, so as to show that the subsequent dispute *Page 324 
was touching it. Then it proceeds to say that the processioner was about to run some line from a spanish oak on the south side of the branch, and that he was forbidden by Wilson, and that he went to the next station, beginning at a black oak and ran thence. On the line, then, from the spanish oak we must understand that there was "a dispute," and that there was none on the line from the black oak, because the former, Wilson, would not let him run, and to running the latter he made no objection. How that could be it is not easy to understand, as the report calls the black oak, "the next station," as we suppose, in Hoyle's deed or claim; and, therefore, it would seem the line must be a straight one from the spanish to the black oak. Certainly, however, the report professes to state a dispute as to a line from the spanish oak. But what it was no one can possibly divine, for it does not describe any course or distance or terminus for the line claimed by Hoyle (470) from the spanish oak, unless, indeed, the black oak be the terminus, and in that case there is the absurdity just mentioned. But after going through six or eight lines after leaving the black oak, the processioner got to a maple corner, and was there also stopped by Wilson, although Hoyle wished him to run further, though in what direction and how far, or how many lines, is not stated. It is obvious, therefore, that no particular dispute — no precise issue — upon any part of the boundary is here reported; and a report of the freeholders of particular lines, either from the maple or the spanish oak, may not conform to the claim of either party, although their province is "to go on the
lines disputed" and "establish such disputed lines." And thus it turned out that in this case the freeholders in part did; for, beginning at the maple, where the processioner was stopped, they ran three lines, described by course, distance, and termini, to the spanish oak, at which the processioner wished to begin, and then again, a line south 54 east 119 poles from the spanish to the black oak, where the processioner actually began his first survey. Therefore, instead of deciding disputes raised in the report and establishing lines therein stated to be claimed by one party or the other, the freeholders have established lines which, for aught that we see, neither party alleged to be his. In fine, the processioner reported no issue between the parties, and there was, in fact, nothing definite to be tried; and, therefore, all the proceedings were properly quashed.
PER CURIAM. Affirmed.
Cited: Porter v. Durham, 90 N.C. 58; Forney v. Williamson, 98 N.C. 332;Euliss v. McAdams, 101 N.C. 397; Vandyke v. Farris, 126 N.C. 745. *Page 325 
(471)